

Rochester
2280 East Avenue, 1st Floor
Rochester, New York 14610
585.218.9999 | P
info@abramslaw.com | E

Long Island · Brooklyn · White Plains · Rochester · Albany

**Maureen T. Bass, Esq.**
**Partner**
mbass@abramslaw.com

August 27, 2024

**VIA: ECF**

Hon. Mark W. Pedersen
United States Magistrate Judge
100 State Street
Rochester, New York 14614

    Re:    *Casey Voelkl v. Town of Greece, et al.*
            Case No. 23-cv-06098

Dear Magistrate Judge Pedersen:

      We write this letter to request (1) a discovery conference prior to filing a motion to compel, and (2) this Court's consideration of the appointment of a special master to preside over discovery.

      There is no dispute that the Greece Police Chief wrecked his fleet vehicle days before a contested election. There is no dispute that Plaintiff, the former Deputy Chief, called the Monroe County District Attorney and requested an independent investigation. There is also no dispute that after these events, Greece (1) demoted Plaintiff to patrol officer, (2) sent a letter to his certifying agency, the New York State Division of Criminal Justice Services, inquiring about Plaintiff's "cheating", (3) denied Plaintiff enrollment in Greece's health insurance plan, (4) completed an off-cycle evaluation, and (5) inserted a counseling memorandum in his file after he retired.

      This case does not span a great period of time, and involves a limited number of individuals and discrete allegations.

      The only real dispute here is whether the Defendants' actions were justified and in compliance with applicable laws and procedures, or as the Plaintiff claims, unlawful retaliatory acts. As with any retaliation case, the Defendants' motives, deliberations and intentions are material issues subject to discovery.

      On May 14, 2024, Plaintiff served his document demands. In addition to the parties, Plaintiff identified 19 individuals as ESI custodians who he understood were involved with or had knowledge of the actions taken above. They included:



Hon. Mark W. Pedersen
August 27, 2024
Page | 2

**Parties**
Michelle Marini (both work and personal emails and cell devices)
William Reilich (both work and personal emails and cell devices)
Casey Voelkl

**Personnel Directors**
Keith Suhr (Greece personnel director)
Anni (Baxter) Evans (former Greece personnel director)
Kelsey Feeney (former Greece personnel director)

**Plaintiff's Former Supervisors**
Former Chief Andrew Forsythe
Former Acting Chief Jason Helfer
Chief Michael Wood
Deputy Chief Naser Zenelovic
Deputy Chief Ryan Parina
Deputy Chief Aaron Springer
Special Deputy Chief Joseph Morabito
Assistant to Special Deputy Chief Mark Case

**Witnesses Identified in Defendants' Initial Rule 26 Disclosures**
Brian Marianetti
Jared Rene
Joshua Spearman
Andrew Potter

**Greece Board Members Identified in Defendants' Initial Rule 26 Disclosures as Having Information About the Town's Response to the Chief's Crash**
Michael Barry
Diana Christodaro
Mike Bloomer
William Murphy



Hon. Mark W. Pedersen
August 27, 2024
Page | 3

In addition to identifying these particular custodians, Plaintiff requested the production of:

**To the extent not covered by the above, all documents concerning Bryan Root and the Forsythe MVA (hereinafter referred to as the "Root Documents.")**

Plaintiff's Document Demand to the Town of Greece, p 18 ₱ 72 (emphasis added). On July 1, 2024, Greece agreed to produce these documents, responding:

**RESPONSE: Defendant objects to this request to the extent it is overbroad, unduly burdensome and not limited to the subject matter of this action.** *Subject to the foregoing general and specific objections, <u>Defendant will produce responsive documents after a reasonable search</u>.*

Town of Greece Response to Plaintiff's Discovery Demands dated July 1, 2024 (emphasis added).

From the custodians identified and listed above, to date, and after countless conferences, letters and emails, Plaintiff has only received emails from the boxes of Plaintiff, Mr. Helfer, Mr. Parina, Mr. Potter, Mr. Spearman, and Mr. Rene. Plaintiff has also received some emails from the boxes of Mr. Morabito and Mr. Case in response to subpoenas.

To the best of Plaintiff's knowledge, there remain twelve (12) identified custodians from whom we have received no responsive documents or been provided with any update as to a search. These include Ms. Marini, Mr. Reilich, Ms. Evans, Ms. Feeley, Mr. Wood, Mr. Zenelovic, Mr. Springer, Mr. Marianetti, Mr. Barry, Ms. Christodaro, Mr. Murphy and Mr. Bloomer. With respect to some of these witnesses including the individual Defendants, there are outstanding requests related to multiple emails and cellular devices. Yesterday, we were told the Greece employee Mr. Suhr had completed his own search of his own box and identified responsive documents, but those documents have not yet been produced to Plaintiff.

Even though Defendants' document production does not appear to be near complete, there are fourteen (14) depositions that have been noticed. Ms. Marini's deposition has not been scheduled as Defendants' counsel indicates that only her criminal defense attorney, Joseph Damelio, may schedule that deposition after her recent indictment.

Yesterday, after the deposition of a third-party witness subpoenaed by Defendants, I requested a status update and asked Mr. Sleight and Ms. Ivy when they expected the Defendants' production to be complete. They were unable to commit to even estimating a date. As with previous communications both verbal and in written, we indicated our willingness to narrow times, custodians and identify search terms. Both counsel indicated they were not prepared to have that



discussion at that time (even though these issues had been raised in several written communications prior to this date).

Under those circumstances, I stated that that it would be Plaintiff's position that the 14 depositions of primarily third-party witnesses should not move forward until the Defendants completed their production so that we could avoid repeat depositions. It is my recollection that Mr. Sleight verbally agreed.

Later in the conversation, Defendants' counsel changed their mind and advised that they were fine with adjourning all *other* depositions, but ***not*** the deposition of Bryan Root (scheduled for today). Notably, Mr. Root has already been subject to a compelled and recorded interview by Greece about the Forsythe MVA and was not identified on Defendants' Initial Rule 26 Disclosures as one of the 20 individuals with any knowledge of relevant information related to this case.

Mr. Sleight finally acknowledged his real motive for wanting to proceed with Greece's second compelled interview of Mr. Root -- because he believed it created a conflict of interest for Plaintiff's law firm as it represents Mr. Root in certain state court litigation. In other words, the urgency to depose Mr. Root has nothing to do with discovering new relevant information relating to this case, but presents an orchestrated opportunity to attack opposing counsel.

Mr. Sleight did not articulate any reason why Mr. Root's deposition should not be adjourned until after Greece produced the Root Documents. Before I left their office in the early afternoon, I advised both Mr. Sleight and Ms. Ivy that Mr. Root's deposition would not take place under those circumstances. I advised them that I would confirm that fact in written correspondence, which was sent before the close of business.

After hours, Ms. Ivy responded by demanding Mr. Root's appearance and falsely stating:

**Please note that Plaintiff did not request any documents relating to Mr. Root, however Defendants conducted a search of Mr. Root's e-mails and produced the responsive documents we located. No other searches for documents relating to Mr. Root are under way, and there is no reason whatsoever to delay his deposition.**

As noted above Plaintiff specifically requested "all documents concerning Bryan Root and the Forsythe MVA." The Root Documents would not be limited to just emails in Mr. Root's mailbox and as such, Plaintiff does not and cannot have the full universe of Root Documents.



Hon. Mark W. Pedersen
August 27, 2024
Page | 5

    Whenever Defendants' document production is completed, witnesses may need to be recalled to provide testimony about documents that Plaintiff did not know existed at the time of the deposition. This would (1) be an unnecessary burden to non-party witnesses, (2) cause unnecessary costs and fees, and (3) further delay the completion of discovery. Practically, as Mr. Sleight initially agreed, it does not make sense to move forward with depositions when Defendants cannot even identify when they believe their document production will be complete.

    Unfortunately, this letter is not just about a "second bite at the apple" compelled testimony of Mr. Root that is not likely to lead to any relevant discovery related to this case. We respectfully request a conference and consideration of a special master as we have concerns that Defendants' litigation strategy is not in compliance with the Rules and Orders of this Court regarding discovery and civility. In addition to the circumstances set forth above, other examples include:

- Plaintiff issued a subpoena duces tecum to Mr. Case, an investigator who worked on Greece's internal affairs investigation. During his deposition, Mr. Case admitted that he had not produced documents at Mr. Sleight's direction. Per his testimony, with no attorney review, Mr. Sleight directed Mr. Case to pull out "privileged" documents from his production. With respect to the documents that were produced, even though Mr. Sleight's office received them several days before his deposition, they were not turned over until late Friday evening with a scheduled Monday morning deposition. There has not been a privilege log prepared for the documents Mr. Case pulled out of the production (but one was created for a document Defendants wanted to "claw back.")

- During Mr. Morabito's deposition, Mr. Sleight directed Mr. Morabito to not answer certain questions. This included the question "Are you represented by Mr. Sleight?"

- Mr. Morabito indicated he had an "accordion of documents" at his home and that he would provide them to Defendants' counsel for production. Defendants' counsel provided 4 documents and when I asked Mr. Sleight for an explanation as to the other documents, he shrugged his shoulders and provided no explanation for the discrepancy.

- On August 26, 2024, Defendants' counsel advised that while they represent Ms. Marini in this litigation, we needed to schedule her deposition with her criminal defense attorney.

- For the first time on August 26, 2024, Mr. Sleight indicated that he would have to consider whether the Defendants' entire deliberative process with respect to Plaintiff's demotion,



might be shielded from discovery because of "executive session privilege" and "attorney client privilege." Executive Session Privilege, to the extent is it applicable, is not identified in Defendants' written response to Plaintiff's document demands. It was also not previously raised with this Court in the initial conference.

I respectfully submit to this Court that this case requires additional supervision because after several conferences and written communications, Defendants continue to stonewall discovery except for when they believe it can be used to attack opposing counsel. In sum, these issues do not involve "run of mill" discovery disagreements and our client is incurring incredible expense in connection with our unsuccessful attempts to confer in good faith.

Respectfully submitted,

*Maureen Bass*

Maureen T. Bass, Esq.

CC (via ECF):

Karl Sleight
Svetlana Ivy