UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CASEY VOELKL,

                      Plaintiff,

            v.

TOWN OF GREECE, GREECE POLICE
DEPARMENT, WILLIAM D. REILICH,
MICHELLE MARINI,

                      Defendants.
_____

**DECISION AND ORDER**

6:23-CV-06098 EAW

## <u>INTRODUCTION</u>

Plaintiff Casey Voelkl ("Plaintiff"), former Deputy Chief of Police for the Town of Greece, alleges that defendants Town of Greece, Greece Police Department ("GPD"), William D. Reilich ("Reilich"), and Michelle Marini ("Marini") (collectively "Defendants") retaliated against him for reporting misconduct by Town of Greece officials in violation of his constitutional and state law rights. (Dkt. 1).

Presently before the Court is Defendants' partial motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and motion for an extension of time to answer. (Dkt. 21). For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part and motion for extension of time to answer is granted. GPD is dismissed as a party, all claims against Reilich and Marini in their official capacities are dismissed, and Plaintiff's causes of action for intentional infliction of emotional distress and intentional

- 1 -

interference with prospective economic advantage are dismissed, but in all other respects, Defendants' motion to dismiss is denied.

## BACKGROUND

### I.    Factual Background

The instant facts are taken from Plaintiff's amended complaint. (Dkt. 19). As required at this stage of the proceedings, Plaintiff's well-pleaded factual allegations are taken as true.

Plaintiff was hired by the GPD on July 21, 2003, and was promoted to Deputy Chief on October 24, 2015. (*Id.* at ¶ 10).  Throughout his employment with the GPD, Plaintiff received many awards and letters of recognition and was nominated for the Medal of Valor, one of the highest honors bestowed on a police officer.  (*Id.* at ¶ 11).

On or about January 1, 2021, Andrew Forsythe ("Chief Forsythe") was selected by Reilich, the Town of Greece Supervisor, to be the GPD Chief.  (*Id.* at ¶ 14).  Chief Forsythe had two deputy chiefs, Plaintiff and Deputy Chief Jason Helfer ("Deputy Chief Helfer"). (*Id.* at ¶ 15).

On October 20, 2021, Chief Forsythe attended an event where he was reportedly drinking alcohol and afterward at around 12:55 a.m., crashed his GPD-issued vehicle.  (*Id.* at ¶¶ 17, 18).  Upon information and belief, around the time of the crash, Marini, the Town of Greece Deputy Supervisor, received a phone call informing her of the accident.  (*Id.* at ¶ 19).  Plaintiff alleges on information and belief, that at about 1:43 a.m., Chief Forsythe used a police radio to request that a GPD Sergeant come to his location.  (*Id.* at ¶ 20).

Two officers, including a lieutenant, responded to the scene to make a preliminary determination of whether a crime had been committed. (*Id.* at ¶¶ 21, 22). At approximately 2:00 a.m., Plaintiff received a notification call from the lieutenant officer at the scene who advised Plaintiff that there had been an accident, alcohol was not a factor, and there was no crime to investigate. (*Id.* at ¶ 23). Plaintiff's assistance was not requested and Plaintiff had no reason to doubt the lieutenant's assessment that no crime was committed. (*Id.* at ¶¶ 24, 25). At around 2:45 a.m. as Plaintiff was driving to the scene, he was informed that Chief Forsythe had been taken home, and upon Plaintiff's arrival at the scene, he assisted the responding officers with their investigation until about 4:45 a.m. (*Id.* at ¶ 26).

Chief Forsythe reported to work at the GPD around 8:00 a.m. that morning and around 8:30 a.m., Plaintiff spoke to him. (*Id.* at ¶¶ 27, 28). Chief Forsythe informed Plaintiff that Reilich's office was notified about the accident and Plaintiff told Chief Forsythe that he had ordered the responding officers to document their investigation thoroughly and truthfully. (*Id.* at ¶¶ 28, 29).

In the following hours, while Plaintiff supervised the completion of reports of the investigation, Chief Forsythe met with Reilich and Marini. (*Id.* at ¶ 30). Upon information and belief, Chief Forsythe told Reilich and Marini that the accident was caused by his having to swerve to avoid a deer. (*Id.* at ¶ 32). Upon information and belief, Chief Forsythe told Marini that he had consumed some alcohol before the accident. (*Id.* at ¶ 35). When interviewed later, Marini stated that no one indicated that Chief Forsythe could have been drinking and that she encouraged him to see a doctor. (*Id.* at ¶¶ 36, 37). Upon information and belief, Reilich and Marini did not make arrangements to notify the public of the

- 3 -

incident, contact any law enforcement agency, or notify the Greece Personnel Director or Human Resources about the accident.  (*Id.* at ¶ 38).

Certain employees were discussing the crash and condition of Chief Forsythe's car and Reilich and Marini's failure to disclose the crash to Greece residents, with some employees discussing whether Defendants were part of a cover-up.  (*Id.* at ¶ 39).  At approximately 8:51 a.m. that morning, a GPD Sergeant entered the impound lot and took photographs of the vehicle.  (*Id.* at ¶ 40).  At approximately 9:20 a.m., Deputy Chief Helfer told Plaintiff that he was collecting the accident reports for delivery to the Town Attorneys' Office.  (*Id.* at ¶ 41).  Just before 2:00 p.m. that afternoon, local news media began contacting GPD Sergeant Jared Rene, the Department's Public Information Officer, to ask about the accident and if alcohol was a factor.  (*Id.* at ¶ 42).  Sergeant Rene contacted Marini who instructed him to focus on Chief Forsythe's health in response to questioning rather than where he was before the accident.  (*Id.* at ¶¶ 44, 45).

On Saturday, October 23, 2021, Marini was advised by Reilich that a reporter had informed him that there was a report that there were sparks flying from Chief Forsythe's vehicle as he drove.  (*Id.* at ¶ 48).  Marini and Reilich concluded that Chief Forsythe should be placed on administrative leave.  (*Id.*).

At about 2:30 p.m. that day, Plaintiff and Deputy Chief Helfer discussed their concerns about the incident and as a result, Deputy Chief Helfer notified Town Attorney Brian Marianetti of their opinion that an outside investigation was necessary.  (*Id.* at ¶ 50).  It is believed that the Town Attorney then contacted Reilich about that communication and Marini in turn contacted Deputy Chief Helfer, angry that he had gone behind her back in

contacting the Town Attorney.  (*Id.* at ¶¶ 52, 53).  Deputy Chief Helfer texted Plaintiff that Marini "makes me feel like I did something wrong by calling [the Town Attorney]."  (*Id.* at ¶ 54).

At approximately 3:33 p.m. that day, after learning of Marini's reaction, Plaintiff contacted the Monroe County District Attorney and requested an independent investigation of the crash and the GPD response to it.  (*Id.* at ¶ 55).  Plaintiff then notified Marini of his call with the District Attorney.  (*Id.* at ¶ 59).  Marini directed Plaintiff to tell Chief Forsythe that he had requested the investigation and to tell the District Attorney that her press release should indicate that the Town of Greece requested the investigation.  (*Id.* at ¶ 59).  Plaintiff was also told that Chief Forsythe would not be placed on leave or suspended during the District Attorney's investigation.  (*Id.* at ¶ 60).  On Sunday, October 24, 2021, both Plaintiff and Deputy Chief Helfer provided statements to the District Attorney's Office.  (*Id.* at ¶ 65).

As Reilich was campaigning for reelection, he released a statement that he had called for Chief Forsythe's resignation.  (*Id.* at ¶ 68).  On November 2, 2021, Reilich was re-elected as Greece Town Supervisor.  (*Id.* at ¶ 75).

After the election, Defendants then turned their attention to punishing and suspending Plaintiff.  (*Id.* at ¶¶ 76, 80).  On November 8, 2021, Plaintiff received a letter with the subject line: "Immediate Suspension."  (*Id.* at ¶ 80).  Plaintiff was stripped of his cell phone, police credentials, police uniforms, access cards, computers, badge, and firearms before being escorted from the premises.  (*Id.* at ¶¶ 80, 81).

At taxpayer cost, Defendants opened an investigation to target GPD officers who cooperated with the District Attorney's investigation in order to create a narrative that police officers participated in a cover-up worthy of disciplinary charges. (*Id.* at ¶¶ 84, 86). The direction of the investigation was defined by the officials who engineered the cover-up and Marini and Reilich discussed the draft of the report before its issuance and made revisions. (*Id.* at ¶¶ 88, 92). An investigation report was issued 42 days later (*Id.* at ¶ 95). The report included many inaccuracies and contained dozens of pages of findings, recommendations, and disciplinary charges with the highest charges leveled against the officers who acted to prevent a cover-up. (*Id.* at ¶¶ 96, 97).

One or more of the Defendants created an internal GPD memorandum that directed that effective December 21, 2021, Plaintiff was "temporarily assigned as Patrol Officer from Deputy Chief of the Operations Bureau effective immediately." (*Id.* at ¶ 99). This title change constituted a four civil rank demotion and resulted in a pay cut and change of benefits that could not be legally effectuated by an internal GPD memorandum. (*Id.* at ¶¶ 100, 101). The notice of charges was not personally served on Plaintiff. (*Id.* at ¶ 104). Plaintiff was given the unprecedented option of taking the demotion or face termination after the activation of disciplinary charges. (*Id.* at ¶ 106). Plaintiff filed a timely Notice of Claim. (*Id.* at ¶ 112). Plaintiff reported to work as ordered and performed the duties of patrol officer as assigned. (*Id.* at ¶ 111).

As additional retaliation, on or about March 11, 2022, the Town of Greece Personnel Director sent a letter to the New York State Division of Criminal Justice Services to seek documentation from 2017 and 2018 regarding Plaintiff potentially cheating on a fingerprint

examination.  (*Id.* at ¶¶ 114, 115).  Plaintiff believes that this was intended to discredit him after he filed a notice of claim.  (*Id.* at ¶ 117).

Unable to live with the fear of additional retaliation and potential loss of his full pension, on May 14, 2023, Plaintiff notified GPD that he would be retiring effective May 31, 2023.  (*Id.* at ¶¶ 118, 119).  When Plaintiff requested to be enrolled in the Town's healthcare plan in retirement, as provided for in the Managers Handbook, Plaintiff was notified that his request was "not appropriate and appeared perfidious" and that he could elect to activate the disciplinary charges from December 20, 2021, and proceed to hearing. (*Id.* at ¶ 124).  Plaintiff alleges that this was an attempt to resurrect untimely disciplinary charges to deny Plaintiff the retirement benefits to which he was entitled.  (*Id.* at ¶ 129). Plaintiff was also provided a memorandum purportedly issued on December 20, 2021, relating to his demotion, that he had never seen before and was not contained in his personnel file that he obtained via a FOIL request on February 9, 2022.  (*Id.* at ¶¶ 135, 136).  Plaintiff believes that these efforts were another attempt to retroactively justify his demotion and further retaliate against Plaintiff.  (*Id.* at ¶ 137).  Plaintiff was also notified that an annual evaluation of him had been ordered even though it would be off schedule and in his nearly 20 years with the GPD, he never saw a premature evaluation be completed on an officer within a week of an announced retirement.  (*Id.* at ¶ 143).  Two days before his retirement, his evaluation was presented to him and his evaluation was outstanding but he was given a 2/5 for attendance resulting from sick time missed for a shoulder injury and surgery.  (*Id.* at ¶¶ 146, 147).  A counseling memorandum was issued to Plaintiff reprimanding him for his use of sick time with the sole purpose of harassing him.  (*Id.* at

¶¶ 148, 152).  On May 31, 2023, Plaintiff's forced retirement became effective.  (*Id.* at ¶ 154).

In his complaint, Plaintiff asserts claims for (1) declaratory judgment reinstating and restoring his rank, compensation, benefits, and seniority; (2) deprivation of due process rights under 42 U.S.C. § 1983 against all Defendants; (3) First Amendment retaliation pursuant to 42 U.S.C. § 1983 against all Defendants; (4) violation of New York Civil Service Law § 75-b against the Town of Greece and GPD; (5) intentional infliction of emotional distress against all Defendants; (6) intentional interference with prospective economic advantage against all Defendants; and (7) breach of contract against the Town of Greece and GPD.

## II.  <u>Procedural Background</u>

Plaintiff commenced this action against Defendants on February 3, 2023.  (Dkt. 1). On February 28, 2023, Defendants filed their answer.  (Dkt. 5).  On September 21, 2023, Plaintiff's unopposed motion to amend was granted (Dkt. 18), and on September 25, 2023, Plaintiff filed an amended complaint.  (Dkt. 19).

Defendants filed the instant motion to dismiss and extension of time to answer on October 17, 2023.  (Dkt. 21).  On November 7, 2023, Plaintiff filed his opposition.  (Dkt. 24).  On November 14, 2023, Defendants filed their reply.  (Dkt. 25).

On February 6, 2025, this matter was reassigned to the undersigned.

## DISCUSSION

### I.     Legal Standards

#### A.     Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at

555). "[O]n a motion to dismiss, the Court may consider a document with terms and effects that the complaint relies heavily on, and which make the document integral to the complaint." *Scott v. Rochester Gas & Elec.*, 333 F. Supp. 3d 273, 275 n.1 (W.D.N.Y. 2018) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

**B.    Section 1983**

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

As for any § 1983 claim, a plaintiff is required to demonstrate a defendant's personal involvement in the deprivation of a federal constitutional right. *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (a § 1983 plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" (quotation and citation omitted)); *Bellinger v. Fludd*, No. 20-CV-2206 (EK)(SIL), 2020 WL 6118823, at *2 (E.D.N.Y. Oct. 16, 2020) ("A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation." (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010))).

- 10 -

## II.    <u>Defendants' Motion to Dismiss</u>

By their partial motion to dismiss, Defendants move to dismiss each of Plaintiff's claims except for his claim arising under New York Civil Service Law § 75-b.

Before addressing the merits of the motion, as a threshold matter, the Court notes that Plaintiff names as Defendants the Town of Greece, GPD, Reilich, and Marini. Although the Town of Greece is a municipality that can be sued under § 1983, *see Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 690 (1978), the GPD is merely an administrative arm of the Town and cannot be sued as a separate legal entity, *Baez v. Tioga Cnty.*, No. 9:23-CV-1512 (LEK/ML), 2024 WL 3371034, at *3 (N.D.N.Y. July 11, 2024) ("[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)); *Johnson v. Town of Greece*, No. 23-CV-6137-FPG, 2024 WL 185175, at *1 (W.D.N.Y. Jan. 17, 2024) ("Defendants are correct that the TGPD, which is an administrative arm of the Town and lacks the capacity to sue or be sued, is not a proper defendant in this matter.  As such, the Defendants' motion to dismiss is granted as to all claims against the TGPD."); *Fusco v. Cnty. of Nassau,* 492 F. Supp. 3d 71, 77 (E.D.N.Y. 2020) ("The Nassau County Police Department is not a suable entity because it is an administrative arm of Nassau County.").  Plaintiff's claims against the GPD are therefore dismissed with prejudice.

In addition, it is well settled that "a suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer

is an agent." *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003).  Therefore, although Plaintiff did not definitively plead whether he was asserting his claims against Reilich and Marini in their official or individual capacities, any official capacity claims against them are coextensive with Plaintiff's claims against the Town of Greece and must be dismissed with prejudice.  *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." (citation omitted)); *Alger v. County of Albany*, 489 F. Supp. 2d 155, 165 (N.D.N.Y. 2006) (dismissing a "claim against an individual in her official capacity [as] nothing more than a claim against the municipality itself").

### A.    Due Process

The Due Process Clause of the Fourteenth Amendment was "intended to secure the individual from the arbitrary exercise of the powers of government . . . [and] serves to prevent governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quotations and citations omitted).  To succeed on a due process claim, a plaintiff must establish that "he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest."  *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994).  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In his due process claim, Plaintiff alleges that he had a property interest in his continued employment as Deputy Chief of the GPD and that Defendants' actions deprived him of his constitutional rights. Defendants argue that Plaintiff's due process claim must be dismissed because he has not plausibly alleged the existence of municipal liability under *Monell* or sufficient personal involvement of Reilich or Marini. The Court disagrees.

As noted above, a municipality may be named only as a defendant under § 1983 in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under § 1983. A municipality may not be held liable just because it employs a tortfeasor. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992). It is only where a municipality, through the execution of its policies, deprives an individual of his constitutional rights, that it can be held liable for an injury. *Monell*, 436 U.S. at 694; *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (when a plaintiff seeks to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy") (quoting *Monell*, 436 U.S. at 691).

Official municipal policy can be established by alleging:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

- 13 -

*Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 315 (N.D.N.Y. 2023) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Importantly, "[a] municipality may . . . be liable for even a single unconstitutional act of an official who has final policy-making authority." *Taylor v. City of New York (Dep't of Sanitation)*, No. 17 CV 1424-LTS-SDA, 2019 WL 3936980, at *5 (S.D.N.Y. Aug. 20, 2019). "If an official's decision was, at the time it was made, for practical or legal reasons the municipality's final decision, then they are a final policymaker." *Id.* (alterations and quotation omitted); *see also Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) ("A single unlawful discharge, if ordered by a person 'whose edicts or acts may fairly be said to represent official policy,' *Monell*, 436 U.S. at 694, may support an action against the municipal corporation. . . .  Where an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy."); *Barzilay v. City of New York*, 610 F. Supp. 3d 544, 618 (S.D.N.Y. 2022) ("Because '[a]n official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions,' to determine whether someone has the requisite policy-making authority, a court must consider 'proof of the official's scope of employment and his role within the municipal or corporate organization.'. . .  Thus, evidence that an individual 'held a top level position with [an organization] and had authority to order' personnel decisions, along with evidence that the individual's 'authority over personnel decisions was final' . . . is sufficient to show a municipal policy." (quoting *Rookard*, 710 F.2d at 45)).  "Mayors may be treated as policy-makers without proof of their specific powers and responsibilities.  Lesser officials,

however, cannot similarly be presumed to embody plenary municipal power." *Donovan v. Norwich City Sch. Dist.*, No. 3:19-CV-1638, 2022 WL 623904, at *11 (N.D.N.Y. Mar. 3, 2022) (quoting *Rookard*, 710 F.2d at 45, n. 4). At the pleading stage, a plaintiff must allege sufficient facts to support a fair inference for such a conclusion. *Taylor*, 2019 WL 3936980, at *5; *Morizio v. Town of Oyster Bay*, No. CV141241(LDW)(SIL), 2015 WL 13721649, at *7 (E.D.N.Y. Apr. 24, 2015) ("Notably, [a]t the pleadings stage, it is sufficient for the complaint to allege facts suggesting that Defendants may be determined to have final policymaking authority as a matter of law." (citation and quotation omitted)).

Plaintiff has alleged sufficient facts to support a fair inference that Reilich, the Town Supervisor, and Marini, the Deputy Town Supervisor, were policymakers with final authority over the determination to demote Plaintiff and deprive him of the income and benefits to which he was entitled. Plaintiff alleges that Reilich and Marini were personally involved in purposely attempting to conceal the circumstances of Chief Forsythe's accident and then orchestrated and tampered with an investigation and report designed to punish the GPD officers who acted to avoid a cover-up. He further alleges that because of the actions of Reilich and Marini, he was demoted from his position, faced unwarranted scrutiny, and was deprived benefits to which he was entitled. These facts support a finding that Plaintiff has plausibly alleged a due process claim against the Town of Greece and Reilich and Marini in their individual capacities. Thus, Defendants' motion to dismiss this claim is denied.

### B.    First Amendment Retaliation

To state a plausible claim for First Amendment retaliation, a plaintiff must allege: "(1) his speech or conduct was protected by the First Amendment; (2) [defendants] took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  *Persaud v. City of New York*, No. 1:22-CV-02919 (MKV), 2023 WL 2664078, at *4 (S.D.N.Y. Mar. 28, 2023) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086-FPG, 2021 WL 5086405, at *4 (W.D.N.Y. Nov. 2, 2021) ("The elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case." (quotation and citation omitted)).

As to the first element, the Supreme Court in *Lane v. Franks*, 573 U.S. 228 (2014), outlined a two-step inquiry into whether a public employee's speech is entitled to protection:

> The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.  If the answer is yes, then the possibility of a First Amendment claim arises.  The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Id.* at 237 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *see also Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82-83 (2d Cir. 2022) ("So in assessing the first prong of the retaliation test–whether a public employee's speech is protected–we must consider 'two separate subquestions': (1) whether the employee spoke as a citizen rather than solely as an employee, and (2) whether he spoke on a matter of public concern. . . .  If

either question is answered in the negative, our inquiry may end there.  If both questions are answered in the affirmative, we may proceed to consider whether the employer had an adequate justification for treating the employee differently from any other member of the general public based on the government's needs as an employer." (citations and quotations omitted)); *DiFonzo v. Cnty. of Niagara*, No. 1:22-CV-588, 2023 WL 1801695, at *5 (W.D.N.Y. Feb. 7, 2023) ("A public employee's speech 'is protected by the First Amendment only when the employee is speaking as a citizen . . . on a matter of public concern.'" (quoting *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012))).

Here, Defendants do not contest that the speech related to a matter of public concern, *see Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) ("[A] topic is a matter of public concern for First Amendment purposes if it is 'of general interest,' or 'of legitimate news interest,' or 'of value and concern to the public at the time' of the speech." (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004))), but focus their argument on their position that Plaintiff's statements cannot constitute constitutionally protected speech because at the time the statements were made, Plaintiff was not speaking as a private citizen, but solely as an employee.  "The Second Circuit has identified "two relevant inquiries to determine whether a public employee speaks as a citizen: (1) whether the speech fall[s] outside of the employee's official responsibilities, and (2) whether a civilian analogue [(*i.e.*, a form or channel of discourse available to non-employee citizens)] exist[s]." *Lopez v. Falco*, No. 23-CV-10420 (KMK), 2024 WL 4252561, at *12 (S.D.N.Y. Sept. 19, 2024) (quoting *Montero v. City of Yonkers, New York*, 890 F.3d 386, 397 (2d Cir. 2018)).  "Although the second issue 'may be of some help in determining whether one spoke as a citizen, it is not

dispositive—the first inquiry is the critical one." *Id.* (quoting *Montero*, 890 F.3d at 397-98). To assess whether a public employee is speaking pursuant to official duties, courts "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two," in addition to other contextual factors such as whether the plaintiff's speech "was also conveyed to the public." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012); *see also Severin v. New York City Dep't of Educ.*, No. 19-CV-775 (MKV), 2023 WL 2752973, at *7 (S.D.N.Y. Mar. 31, 2023) ("In determining whether an employee spoke pursuant to his official duties, a key question is whether the complaint was part-and-parcel of his concerns about his ability to properly execute his duties." (citations and quotations omitted)), *aff'd*, No. 23-732-CV, 2024 WL 1904574 (2d Cir. May 1, 2024). "[B]ecause the nature of this inquiry is so 'fact intensive and context specific,' courts often decline to determine whether speech was part of an employee's job duties at the motion to dismiss stage." *Salvana v. New York State Dep't of Corr. & Cmty. Supervision*, 621 F. Supp. 3d 287, 303 (N.D.N.Y. 2022) (quotation and citation omitted); *see also Buchanan v. City of New York*, 556 F. Supp. 3d 346, 357 (S.D.N.Y. 2021) (collecting cases holding that "district courts frequently deny as premature pre-discovery motions to dismiss on the grounds that the plaintiff spoke as an employee").

To be sure, internal complaints by an employee often do not rise to the level of protected speech. *See Shara*, 46 F.4th at 80 (affirming dismissal of complaint where bus driver's disagreements with school district mechanic and school district officials over the frequency of bus inspection reporting did not constitute protected speech, regardless of whether the information impacted the safety of school children); *see also Johnson v. Bd.*

*of Educ. Ret. Sys. of City of New York,* No. 18CV4605NGGPK, 2021 WL 2133434, at *6 (E.D.N.Y. May 11, 2021) ("Because he was reporting on a core job function within an established internal channel of communication, Johnson was not speaking as a citizen and his speech is not protected by the First Amendment."), *aff'd*, No. 21-1465-CV, 2022 WL 17076718 (2d Cir. Nov. 18, 2022).  But where it is alleged that the speech falls outside the employee's official responsibilities and beyond what is considered integral to the job, the speech may be entitled to protection.  *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015) (finding police officer's complaint to commanding officers about arrest quota policy at his precinct was citizen speech in part because the officer's job duties "did not include reporting misconduct of supervisors nor did it encompass commenting on precinct-wide policy"); *Finnimore v. Lennon*, No. 3:22-CV-1563 (SRU), 2024 WL 4304610, at *1 (D. Conn. Sept. 26, 2024) (denying motion to dismiss First Amendment retaliation claim and finding that police sergeant's complaints about alleged misconduct and corruption within the police department fell outside the sergeant's official duties).

At this stage of the proceedings, the Court finds that Plaintiff has plausibly stated a First Amendment claim.  Plaintiff has alleged that his speech concerned a matter of public safety and concern and was made as a private citizen.  Plaintiff's contact with the District Attorney's office to request an investigation of how Defendants were handling an internal investigation reflected his concern about a potential cover-up by public officials.  The fact that the speech related to his job does not transform it into unprotected speech as a matter of law and Defendants' challenges to the nature of the speech would require resolution of

fact-specific questions not appropriate for a Rule 12(b)(6) motion. Accordingly, Defendants' motion to dismiss this claim is denied.[1]

### C.    Intentional Infliction of Emotional Distress

"The New York state law tort of intentional infliction of emotional distress 'has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'. . . Furthermore, 'New York sets a high threshold for conduct that is "extreme and outrageous" enough to constitute intentional infliction of emotional distress.'" *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 690 (E.D.N.Y. 2012) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)), *aff'd*, 513 F. App'x 95 (2d Cir. 2013). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993)).

---

[1]    Defendants also move to dismiss Plaintiff's free speech claim to the extent that it arises under the New York State constitution. Plaintiff concedes that if a viable § 1983 claim is plead, a corresponding New York State constitutional claim should be dismissed as duplicative. *Keith v. Mahar*, No. 5:24-CV-1391 (BKS/MJK), 2024 WL 5077348, at *10 (N.D.N.Y. Dec. 11, 2024) ("Because Plaintiff's . . . claims seeking relief under the New York State Constitution are duplicative of his Section 1983 claims under the United States Constitution and are therefore dismissed. "Where a § 1983 claim is brought for a parallel constitutional right, a court will properly dismiss state constitutional claims." (quoting *Barzilay v. City of N.Y.*, 610 F. Supp. 3d 544, 619 (S.D.N.Y. 2022))). Because the Court concludes that Plaintiff has plausibly pleaded a claim for First Amendment retaliation under § 1983, any portion of Plaintiff's claim arising under the New York State constitution is dismissed.

Here, Plaintiff has failed to allege conduct so extreme and outrageous so as to go beyond all bounds of decency in a manner to state a cognizable claim for intentional infliction of emotional distress.   While "[c]ourts have sustained IIED claims in circumstances which have involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy, . . . [i]n employment discrimination cases, New York courts have only rarely found complaints alleging intentional infliction of emotional distress sufficient to survive a Rule 12(b)(6) motion to dismiss." *Rodgers-King v. Candy Digit. Inc*., No. 23-CV-2591 (RA), 2024 WL 382092, at *9 (S.D.N.Y. Feb. 1, 2024) (internal quotations and citations omitted)); *Lydeatte v. Bronx Overall Econ. Dev. Corp*., No. 00CIV5433(GBD), 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) ("It is particularly difficult to withstand a motion to dismiss claims for intentional infliction of emotional distress in the employment law context.  New York Courts are reluctant to allow these claims in employment discrimination cases.").   Even taking Plaintiff's allegations as true, this case does not involve physical detention, arrest, or prosecution, as was present in the cases cited by Plaintiff in support of his arguments.  *See Biswas v. City of New York,* 973 F. Supp. 2d 504 (S.D.N.Y. 2013); *Naples v. Stefanelli*, 972 F. Supp. 2d 373 (E.D.N.Y. 2013).

Thus, taking the allegations against Defendants as true, Plaintiff (despite being afforded the opportunity to amend the complaint) has not plausibly alleged that they intentionally inflicted emotional distress upon Plaintiff being allowed to.  For these reasons,

the Court will grant Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress against them.[2]

### D.    Breach of Contract

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *see also Amable v. New Sch.*, 551 F. Supp. 3d 299, 308 (S.D.N.Y. 2021) (same).

"Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 597 (S.D.N.Y. 2017) (citation omitted).  "To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract." *Fuji Photo Film U.S.A., Inc. v.*

---

[2]    In their moving papers, Defendants also argue that the claim for intentional infliction of emotional distress is time-barred because it is subject to a one-year statute of limitation.  (Dkt. 21-3 at 20).  In response to Defendants' motion, Plaintiff points out that New York General Municipal Law § 50-i(1) modifies the statute of limitations for tort claims and permits a claim to be commenced within "one year and ninety days after the happening of the event upon which the claim is based."  (Dkt. 24 at 21 (misciting the provision as "§ 50-1"); *Hart v. Wal-Mart Stores, Inc.,* No. 1:24-CV-00269 (AMN/CFH), 2024 WL 5057746, at *5 (N.D.N.Y. Dec. 10, 2024) ("When such a claim [for intentional infliction of emotional distress] is brought against a municipality, the limitations period is increased to one year and ninety days.").  Defendants do not address this point in their reply, but because the Court finds that the claim is subject to dismissal on substantive grounds, it need not reach whether the claim is timely.

*McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). "A breach of contract claim 'that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal.'" *Id.* at 412 (quoting *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

Plaintiff's breach of contract claim alleges that the Town of Greece Manager's Handbook was breached when Plaintiff was refused enrollment in lifetime retiree health insurance. In support of their motion to dismiss the claim, Defendants provide the 2023 version of the Manager's Handbook, arguing that it shows that Plaintiff was ineligible for the benefits he sought. Defendants rely on language in the handbook saying "provided you are enrolled at the time of retirement, as a retiree of the Town you may continue membership in a Town health plan . . ." (Dkt. 21-2 at 24). While the Court may consider documents incorporated by reference or integral to the claims, *see Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("[A] contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" is generally considered integral to the complaint and typically considered on a motion to dismiss), Plaintiff notes that the 2023 Manager's Benefits Summary varies significantly from the 2021 version provided to Plaintiff, and indicates that he did not receive or sign the 2023 Manager's Benefits Summary submitted by Defendants in support of the motion to dismiss. The 2021 version submitted by Plaintiff specifically omits the language stating "provided you are enrolled at the time of retirement." (*See* Dkt. 24-3 at 8). Defendants nevertheless urge the Court to conclude as a matter of law that the provision permitting a retiree "to continue membership" has the equivalent meaning.

- 23 -

These are not matters that the Court is able to resolve on a Rule 12(b)(6) motion. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012) ("[I]n the context of a motion to dismiss, 'if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state claim.'" (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004))); *Gee v. Becton, Dickinson & Co.*, 84 Misc. 3d 1218(A) at *4, 220 N.Y.S.3d 652 (Warren Cty. 2024) ("Being that an employee handbook can conceivably create a contract between an employee and employer under appropriate circumstances, and plaintiff has alleged a contract exists, the Court finds that whether or not plaintiff was entitled to certain benefits, as outlined in the Handbook, is properly addressed after discovery, not a pre-answer motion to dismiss.").  For these reasons, Defendants' motion to dismiss Plaintiff's breach of contract claim is denied.

### E.    Intentional Inference With Prospective Economic Advantage

Under New York law, "[t]he four elements of this cause of action are '(1) a prospective contractual relation or business with a third party; (2) defendants' interference with that relation; (3) [that] defendant acted with the sole purpose of harming plaintiff or used dishonest, unfair or improper means; and (4) injury to the plaintiff.'" *FaZe Clan Inc. v. Tenney*, 467 F. Supp. 3d 180, 193 (S.D.N.Y. 2020) (quotation and citation omitted).  "To demonstrate 'but for' causation, a plaintiff must show that any breach would not have occurred but for the activities of the defendant."  *Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide,"* 412 F. Supp. 3d 338, 351 (S.D.N.Y. 2019).

Plaintiff advances no argument in opposition to Defendants' motion to dismiss this claim. "In the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 20 n.4 (E.D.N.Y. 2020) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *see also Kurtz v. Hansell*, No. 20 CIV. 3401 (PAE), 2021 WL 1143619, at *16 (S.D.N.Y. Mar. 24, 2021) (holding that by failing to respond to argument on motion to dismiss "plaintiffs have abandoned that claim"); *East v. Roosevelt Union Free Sch. Dist.*, No. CV193709JSAKT, 2020 WL 13753159, at *20 (E.D.N.Y. July 31, 2020) ("Courts in the Second Circuit have found that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.'" (quoting *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018))); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 TPG FM, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

For these reasons, any such claim for intentional interference with prospective economic advantage has been abandoned and Defendants' motion to dismiss that claim is granted.

## F.    Declaratory Judgment

"The Declaratory Judgment Act provides that, 'in a case of actual controversy within its jurisdiction any court of the United States may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (alterations omitted and quoting 28 U.S.C. § 2201(a)).  When determining whether to entertain an action for declaratory judgment, the Second Circuit has "instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005); *see also Delux Pub. Charter, LLC v. Cnty. of Westchester, N.Y.*, No. 22-CV-01930 (PMH), 2024 WL 3252948, at *13 (S.D.N.Y. July 1, 2024) ("A declaratory judgment is available to adjudicate a present substantial controversy, not for relief from speculation regarding future injury.").

Defendants argue that Plaintiff fails to state a plausible claim for declaratory judgment, arguing that Plaintiff's amended complaint "fails to identify a single future injury that Plaintiff is likely to suffer if declaratory judgment is not granted."  (Dkt. 21-3 at 23).  To the contrary, Plaintiff's claim for declaratory relief alleges that his unlawful demotion by Defendants impacted his rank, compensation, benefits, and seniority.  Because Plaintiff asks the Court to determine whether Defendants complied with federal and state law and such a determination in his favor will offer Plaintiff relief to be restored to those benefits and compensation to which he was entitled, the standard for this claim is satisfied at this stage of the proceedings and Defendants' motion to dismiss the claim is denied.  *See Gov't Emps. Ins. Co. v. Saco*, No. 12-CV-5633 NGG MDG, 2014 WL 639419, at *7 (E.D.N.Y. Feb. 18, 2014) (denying motion to dismiss declaratory judgment claim where

"Plaintiff *does* seek a prospective determination of its rights and responsibilities" under a contract between the parties (internal quotation marks omitted)); *Leventhal v. Franzus Co.*, No. 88 CIV. 3547 (MBM), 1988 WL 132868, at *5 (S.D.N.Y. Dec. 6, 1988) (denying motion to dismiss declaratory judgment claim arising out of employment contract).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. Specifically, GPD is dismissed as a party, all claims against Reilich and Marini in their official capacities are dismissed, and Plaintiff's causes of action for intentional infliction of emotional distress and intentional interference with prospective economic advantage are dismissed, but in all other respects Defendants' motion to dismiss is denied. The Clerk of Court is directed to terminate GPD as a party in this action. The remaining Defendants shall file an answer in accordance with the Federal Rules of Civil Procedure.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 4, 2025
        Rochester, New York